STATE OF WEST VIRGINIA *v.* GEORGE WISEMAN.

(No. 7003)

Submitted October 14, 1931. Decided October 20, 1931.

*M. F. Matheny, L. S. Trotter,* and *John T. Copenhaver,* for plaintiff in error.

*Howard B. Lee,* Attorney General, and *W. Elliott Nefflen,* Assistant Attorney General, for the State.

HATCHER, JUDGE:

Defendant, convicted of grand larceny, was sentenced to four years imprisonment. He seeks reversal of the judgment, on the ground that the evidence does not support the conviction.

The material evidence introduced by the state follows: On the early afternoon of June 3, 1930, Henry Angel, a furrier, met defendant for the first time at the home of George Donaldson, in the city of Charleston. Defendant announced that he was expecting to get married and requested Mrs. Donaldson to suggest something appropriate as a gift for his fiancee. She suggested a neck piece of furs. He then informed Angel

that he would like some furs for that purpose. He declined
to go to the store, but requested Angel to bring some furs to
the Donaldson home for his inspection. The furs were brought
and a set selected by defendant, who asked the price, saying
he "was paying cash, *no installments for him.*" Upon being
told the price was $185.00, he gave specific directions for box-
ing the furs. This was done and defendant started to take
the box. Angel asked for payment, and defendant replied
(according to Angel): "I will tell you what I will do now.
I am going to take these furs over to the lady and see if she
will like them, and if she does, I will come back and pay you.
If not, I will bring back the furs. * * * It won't take me 30
minutes to go to St. Albans and 30 minutes to come back. I
will be back at the most in two hours." Angel agreed to this
proposal and defendant left in his car with the furs about
2:30 P. M. He did not return that day, but the next morning
at about 11 o'clock, he reported to a clerk at Angel's store that
the furs had been stolen from his car. That afternoon Angel
motored to defendant's home at Upper Falls on Coal River
to get the money or the furs. Defendant welcomed him ex-
pansively, requesting him not to mention the furs before de-
fendant's children, as they opposed his marriage; defendant
then showed Angel around the place, during which diversion
one of defendant's sons appropriated Angel's car (for several
hours) and Angel was forced to spend the night there. That
evening, Angel pressed defendant for the furs or payment,
and was assured by defendant that the money would be paid
before Angel left. No payment was made, however, but as
Angel was leaving the next morning, defendant said he would
bring Angel a check to his store. Defendant did not keep
the promise, and Angel saw him no more until the following
Saturday, at Saint Albans, when Angel again requested the
money or the furs. Defendant at that time vilified Angel, and
said Angel had sold him whiskey, not furs, and he was going
to have Angel arrested. Angel has not received any of the
purchase price or the furs.

The defendant confirms the transaction at the Donaldson
home. He says that the box of furs was put in the rumble

seat of his car by Angel, or someone; that he (defendant) thought they had been put back of the front seat, and upon arriving at Saint Albans and not finding them there, he concluded they had been stolen or mislaid; that in the afternoon, after his morning visit to Angel's store, they were found and shown to the young lady (now defendant's wife) who still has them; that he paid $150.00 to Angel the night he was at his home, getting a receipt which defendant has lost (a description of the receipt by his several witnesses varies and is unsatisfactory); that Angel was under the influence of liquor while he was at defendant's home, and what he told Angel at Saint Albans on the following Saturday was merely that he would have Angel arrested for possession of whiskey; and that he once offered Angel the $35.00 balance on the furs but was refused, and he has always been, and is now, able and willing to pay Angel the balance.

Under the verdict of the jury we must give due credit to the evidence of the state. The law applicable to this case is expressed in *State* v. *Edwards,* 51 W. Va. 220. "Where a person, by means of some fraud or trick, procures the delivery of money or goods to him by the owner, with the intent to steal the same, it amounts to a taking of the property within the definition of larceny, unless the delivery of the possession is made for the purpose of passing the title to the property as well as its possession; and, if possession be acquired by such means and with such intent and the goods or money are afterwards converted by the taker to his own use, the offense is larceny." This expression may be supplemented by the following observation in 36 C. J., subject Larceny, sec. 140: "If, however, the intent of the owner is to part with the title only under specified conditions, larceny is committed if the person receiving the chattels converts them to his own use before the conditions are fulfilled."

The circumstances under which defendant obtained possession of the furs (at the Donaldson home) preclude the idea that title thereto passed to him there. He did not even pretend to purchase the furs at the time he took them away. His proposal then, was to purchase them two hours later in case

his fiancee approved. He became merely the bailee of the furs for a specified purpose and a specified time. It is clear that Angel intended to part with the title to the furs only when he received payment. The question of credit or even delay in payment never arose because of defendant's assertion that he *was paying cash*. ''Whether the possession was so obtained with intent to steal is a question for the jury.'' *State* v. *Edwards, supra*. When we marshall defendant's acts, concurrent and subsequent,—his refusal to go to Angel's store, his assertion that he would pay cash, his unexplained failure to return to Angel or pay for the furs within a reasonable time on the day he was permitted to take the furs to his betrothed, his unwarranted tale next morning of the theft of the furs, his baffling Angel that night at his (defendant's) home, his failure to pay next day as promised, and his vilification of Angel and repudiation of the entire transaction the following Saturday,—we are impelled to hold that such conduct is sufficient to support the verdict and we cannot say it is wrong.

We have examined the other (minor) errors alleged in defendant's brief and find nothing prejudicial to him.

The judgment of the lower court is accordingly affirmed.

*Affirmed.*